# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**NELSON T. LOPEZ (#615051)**  **CIVIL ACTION**

**VERSUS**

**18-509-JWD-RLB**

**JAMES LEBLANC, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 8, 2019.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

NELSON T. LOPEZ (#615051)                                CIVIL ACTION

VERSUS

                                                                                18-509-JWD-RLB

JAMES LEBLANC, ET AL.

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court on Motions to Dismiss filed on behalf of defendants James LeBlanc, Darryl Vannoy, Ray Vittorrio, Butch Browning, Jimmy Guidry, and Joseph Landry (R. Docs. 16 and 27). These motions are not opposed.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 James LeBlanc, Darryl Vannoy, Ray Vittorrio, Joseph Landry, Becky Meredith, Butch Browning and Jimmie Guidry alleging that he has been subject to unconstitutional conditions of confinement.[1] He prays for declaratory, injunctive, and monetary relief.

The defendants assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678,

---

[1] Becky Meredith has not yet been served. *See* R. Doc. 28.

*quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id*. (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

The plaintiff alleges the following in his Complaint: On November 17, 2016, the plaintiff was transferred to Camp D from the main prison. Immediately upon transfer, the plaintiff observed foul showering conditions in the form of clogged drainage, odorous water pooled in the shower drains, and inoperable shower heads. On December 22, 2016, the plaintiff composed a letter to defendant Assistant Warden Ray Vittorio to inform him of the same. Defendant Vittorio failed to respond, and the plaintiff sought help from defendant Joseph Landry on December 28, 2016, January 3, 2017, and January 12, 2017. On the last occasion, the plaintiff and two other

inmates asked defendant Landry to contact the maintenance crew and Landry responded, "All this shit I have going on, I don't give a damn about some showers, bother me again and I will lock your black ass up."

Weeks later, the plaintiff sought medical treatment for a painful rash. The plaintiff was prescribed Tolnaftate cream and a powder for a bacterial rash on his thighs and feet.

Camp D is operating at 50% over capacity due to the addition of 32 inmates. Living space per inmate has been reduced from 50 square feet to 42 square feet. The ventilation ducts and windows are inoperable, and the only source of ventilation is an exhaust fan at the back of dorm which is inmate operated at will. Due to the poor ventilation, the plaintiff inhales foul odors and gases emanating from inmates defecating on nearby toilets. The bathrooms are approximately 216 square feet and are meant to accommodate 96 inmates with only five toilets, three shower heads, and six sinks which all have some sort of malfunction. The ventilation in the bathroom is also inoperable.

Due to the lack of temperature control and air circulation, the inmates endure harsh cold temperatures in the winter and stifling hot temperatures in the summer. The ratio of security personnel to inmates is 1 to 192, which causes plaintiff to fear the potential risk to health, safety, and life.

On the morning of April 28, 2017, while working outside, the plaintiff was suffering from an upset stomach and asked Becky Meredith to escort him to the toilet facilities location 50 yards away. Meredith refused and instructed the plaintiff to relieve himself in the nearby ditch. When the plaintiff requested to be escorted again, Meredith threatened to have the plaintiff placed in administrative segregation. The plaintiff ended up soiling his pants causing him to feel degraded and humiliated in front of over 50 individuals.

The moving defendants first assert that the plaintiff is barred from seeking monetary damages against them in their official capacities. In this regard, the defendants are correct. Section 1983 does not provide a federal forum for a litigant who seeks the recovery of monetary damages against state officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989). Additionally, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, the plaintiff's claims for monetary damages asserted against the defendants in their official capacities are subject to dismissal. In contrast, the plaintiff's claims for monetary damages, and declarative and injunctive relief asserted against the defendants in their individual capacities remain viable because a claim against a state official in his individual capacity, seeking to impose liability for actions taken by the official under color of state law, is not treated as a suit against the state. Of course, the plaintiff must prove a deprivation of a constitutional right to obtain any relief.

Turning to the plaintiff's claims asserted against the defendants in their individual capacities, the defendants next assert that the plaintiff is not entitled to the recovery of compensatory damages in this case because he has not alleged a physical injury sufficient to support such recovery. Pursuant to 42 U.S.C. § 1997e(e), a prisoner plaintiff is barred from the receipt of compensatory damages for mental or emotional injury in the absence of some showing of physical injury.

In the instant matter, the plaintiff alleges that he suffered pain and discomfort from a bacterial infection presenting as a rash on his thighs and feet. Accepting his allegations as true, the plaintiff has alleged sufficient facts from which the court could conclude that he suffered more than *de minimus* physical injury. It is possible that further development of the record could demonstrate that the rash was so minimal as to not support a claim for compensatory damages. However, it is not clear at this stage of the proceedings that plaintiff is barred by Section 1997e(e) from recovering compensatory damages.

The defendants next assert that they are entitled to qualified immunity in connection with the plaintiff's claims. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*.

Undertaking the qualified immunity analysis, the Court finds that the defendants' motions should be granted in part. Specifically, the Court concludes that the plaintiff has failed to state a claim against defendants James LeBlanc, Darryl Vannoy, Butch Browning, and Jimmy Guidry.

The prohibition against cruel and unusual punishment mandates that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). *See also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that "[t]he Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones"). However, a constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Harris v. Angelina County, Texas*, 31 F.3d 331, 334 (5th Cir. 1994), *citing Wilson v. Seiter*, *supra,* 501 U.S. at 304. Second, under a subjective standard, the Court must determine that the prison officials responsible for the deprivation have been "deliberately indifferent to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). In applying this standard, the determinative question is whether the defendant prison officials subjectively knew that the inmate plaintiff faced a substantial risk of serious harm, yet disregarded that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan, supra*, 511 at 837. Specifically, prison officials must be shown to have been personally aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and they also must be shown to have drawn the inference. *Id.* While some conditions of confinement may establish an Eighth Amendment violation "in combination," when each would not do so alone, this will occur only when those conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Wilson v. Seiter, supra*, 501 U.S. at 305. Further, conclusory

allegations are not sufficient, and a plaintiff must present facts to support what are otherwise broad and conclusory allegations of wrongdoing. *See Rougley v. GEO Group*, 2011 WL 7796488, *3 (W.D. La. Nov. 7, 2011).

With regards to the plaintiff's complaints of overcrowding, double-celling is constitutional, and overcrowding is not, by itself, a constitutional violation. *See Rhodes* v. *Chapman*, 452 U.S. 337, 348 ("The double celling made necessary by the unanticipated increase in prison population did not lead to deprivations of essential food, medical care of sanitation."); *Collins v. Ainsworth*, 382 F.3d 529, 539 (5th Cir. 2004) (Overcrowding of persons in custody is not *per se* unconstitutional."); *Ruiz v. Estelle (Ruiz II)*, 666 F.2d 854, 858 (5th Cir. 1982) ("The [l]ack of space alone does not constitute cruel and unusual punishment, save perhaps the most aggravated circumstances."). Moreover, there is no constitutional right to a single cell. *See, e.g.*, *Barber v. Quarterman*, 2010 WL 1417650 *9 (E.D. Tex.) (citing *Parker v. Currie*, 2010 WL 10924 (5th Cir. 2010) (inmate desired a single cell but was assigned to general population; no constitutional liberty interest infringed)).

As to the complained of odors worsened by the lack of adequate ventilation, the Constitution does not mandate comfortable prisons and "to the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. Simply put, the Constitution does not afford protection against mere discomfort or inconvenience. *See Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989). While the complained of odors may be unpleasant, such allegations do not constitute a constitutional violation. *See Farr v. Rodriguez,* 255 F. App'x. 925 (5th Cir. 2007) (claim of a "foul odor" caused by an inadequate ventilation system was an "inconvenience of

prison life" which did not amount to the denial of the civilized measure of life's necessities or support an inference of deliberate indifference).

Turning to the plaintiff's complaints regarding the lack of temperature control, although exposure to extreme heat is actionable under certain circumstances, the plaintiff's allegations in this case fall short of what is required to establish a constitutional violation, particularly in the absence of any evidence of harm or medical complication. For example, in *Johnson v. Texas Board of Criminal Justice*, 281 F. App'x. 319 (5th Cir. 2008), the United States Court of Appeal for the Fifth Circuit upheld a dismissal, as frivolous, of an inmate plaintiff's claims, finding that his allegations regarding extreme heat were "not sufficient to state a constitutional claim" because although he alleged that temperatures were "sometimes uncomfortably hot, he did not allege that he suffered from any heat-related injuries despite being subjected to these conditions numerous times." *Id.* at 321. *See also Woods v. Edwards,* 51 F.3d 577, 581 (5th Cir. 1995) (upholding summary judgment in favor of the defendants where the inmate plaintiff alleged that excessive heat at Camp J at LSP aggravated his medical condition but where he "failed to present medical evidence of any significance" to support that assertion); *Ventry v. Gusman*, 2012 WL 1405862, *7 (E.D. La. March 29, 2012) (dismissing as frivolous an inmate's claim regarding uncomfortably hot conditions of confinement where his allegations "[fell] short of what is required to establish a constitutional violation" and where his claim regarding the aggravation of his medical condition was "speculative at best"); *Clark v. Gusman*, 2012 WL 1825306, *6 (E.D. La. March 29, 2012) (same). Similarly, it has been held that purely conclusory allegations of excessive heat and inadequate ventilation, without more, fail to implicate a federal constitutional right. *See Johnson v. Thaler*, 1999 WL 1131941, *1 (5th Cir. Nov. 12, 1999) (concluding that the inmate plaintiffs' conclusory "allegations of inadequate ventilation and excessive heat do not

entitle them to relief under 42 U.S.C. § 1983"); *Parker v. Smith*, 1994 WL 198944, *2 (5th Cir. May 6, 1994) (upholding the frivolous dismissal of a plaintiff's claim that "the ventilation system in the Smith County jail [was] inadequate"). In the instant matter, the plaintiff merely alleges that in the summers he is subject to "stifling hot temperatures" and does not allege that he has suffered any heat related injuries.

Nor has the plaintiff alleged exposure to the type of extremely cold conditions that have been deemed a denial of the minimal measure of life's necessities. *See Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999) (finding such a denial in light of the inmate's "overnight outdoor confinement with no shelter, jacket, blanket, or source of heat as the temperature dropped and the wind blew along with the total lack of bathroom facilities for forty-nine inmates sharing a small bounded area"); *Alex v. Stalder,* 225 F. App'x 313, 314 (5th Cir. 2007) (reciting prisoner's nonfrivolous Eighth Amendment allegations that "he was held in very cold conditions, for an extended period in November and December, wearing nothing but a paper gown during the daytime, and that he was ordered to remain on the cold concrete whenever he attempted to sleep on the warmer, metal bunk"). In the instant matter, the plaintiff has only alleged that he has endured "harsh cold temperatures" during the winter months.

Turning to the plaintiff's claim regarding the lack of toilet and hand washing facilities at the field line work sites, while prolonged denial of access to toilet facilities can obviously rise to the level of a constitutional violation, denial of immediate access on one occasion does not. The plaintiff alleges that a restroom facility was available 50 yards from his work site, but that Becky Meredith refused to escort him to the facility. At most, the plaintiff alleged that he suffered generalized discomfort on this occasion, which is insufficient to state an Eighth Amendment violation. *See Wilson v. Lynaugh,* 878 F.2d 846, 849 (5th Cir. 1989).

With regards to the plaintiff's allegations of an insufficient number of security personnel, the plaintiff has not alleged any increase in violence due to the alleged ratio of one security officer per 192 inmates. Nor does the plaintiff allege that he has been physically harmed in any manner due to the alleged lack of security personnel. The plaintiff merely alleges a speculative fear of a potential risk to health, safety, or life.

Nor do any of these complained of conditions considered together indicate an Eighth Amendment violation. In *Williams v. Edwards*, 547 F.2d 1206 (5th Cir. 1977) the Court concluded that conditions at LSP, consisting of insufficient cell space resulting in an inability to segregate dangerous prisoners, 270 stabbings, 20 deaths, easy inmate access to weapons, lack of security personnel to confiscate weapons, fire and safety hazards, sanitations problems including accumulation of sewage under the main kitchen and a serious rodent problem, lack of medical staff resulting in inmates administering treatments, unsanitary conditions, substandard equipment, and untrained unlicensed pharmacist, violated the constitution. *See also Bienvenu v. Beauregard Parish Police Jury,* 705 F.2d 1457 (5th Cir. 1983) (Plaintiff's statements that the defendant intentionally subjected him to a cold, rainy, roach-infested facility and furnished him with inoperative, scum-encrusted washing and toilet facilities sufficiently alleged a cause of action under the Eighth Amendment). Comparatively, the plaintiff's allegations fall far short of those deemed to be a totality of conditions that violate the Eighth Amendment.

The only allegations which state an Eighth Amendment claim are those regarding the standing water in the showers. The plaintiff has alleged an unsafe condition and that defendants Vittorio, an assistant warden over Camp D, and Joseph Landry, a correctional officer assigned as the Camp D A-team supervisor, knew of the problem and took no steps to alleviate it. Plaintiff alleges that those conditions created "a painful rash" due to defendants' neglect and

"subsequently suffered [a] harsh bacterial rash on his thighs and feet as a result of encountering the continuously neglected unsanitary conditions." (R. Doc. 1 at 9). These allegations are sufficient to state a claim. *See Bruce v. Little,* 568 F. App'x. 283 (5th Cir. 2014).

To the extent the plaintiff complains of a verbal assault by defendant Landry, any complaints the plaintiff may have that he was the object of verbal abuse, harassment, and threats by the defendant, without more, are not actionable under § 1983. *See Orange v. Ellis,* 348 F. App'x. 69, 72 (5th Cir. 2009); and *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir. 1983). Nor is the plaintiff constitutionally entitled to an investigation into his administrative claims or informal complaints, or to a fair or favorable response thereto. *See Mahogany v. Miller*, 252 Fed. Appx. 593 (5th Cir. 2007). *See also Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (holding that an inmate "does not have a federally protected liberty interest" in having his administrative claims resolved to his satisfaction and that a claim "arising from the alleged failure to investigate his grievances is indisputably meritless").

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended dismissal of the majority of plaintiff's claims and defendants over which the district court has original jurisdiction, the Court further recommends that the exercise of supplemental jurisdiction on any state law claims be declined.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the defendants' Motions to Dismiss (R. Docs. 16 and 27) be granted in part, dismissing all of the plaintiff's claims with prejudice, except the plaintiff's claim asserted against defendants Vittorio and Landry regarding the standing water in the showers.[2] It is further recommended that the Court decline the exercise of supplemental jurisdiction in connection with the plaintiff's potential state law claims and that this matter be referred back to the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on March 8, 2019.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2] The plaintiff's claim against Becky Meredith also remain pending as she has not yet been served.